IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:19-cv-02829-RBJ

TOLONDA TOLBERT,

      Plaintiff,

v.

NATIONWIDE AFFINITY INSURANCE COMPANY
OF AMERICA,

      Defendant.

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Nationwide Affinity Insurance Company of America ("Nationwide"), by counsel, Gordon Rees Scully Mansukhani, LLP, hereby moves the Court pursuant to Fed. R. Civ. P. 56(b) for summary judgment on Plaintiff's Second and Third Claims for Relief:

**I.**     **Statement of the case.**

In this action for benefits under an automobile policy issued in New York to two New York residents that covers an automobile garaged in New York, the principal issue is which law applies, New York or Colorado. If New York law applies, then Plaintiff's claims for common law bad faith and violation of C.R.S. §§ 10-3-1115 and 1116 should be dismissed because New York does not recognize a common law cause of action for bad faith breach of insurance contract, and because Colo. Rev. Stat. § 10-3-1116 does not have extraterritorial application. Because the Nationwide policy was issued in New York to New York residents to insure a vehicle garaged in New York, and because the policy expressly references and incorporates New York law into its coverage

provisions, Nationwide asks the Court to hold that New York law governs the policy and accordingly dismiss Plaintiff's extra-contractual claims for relief.

**II.     Statement of undisputed material facts.**

1.      Nationwide issued an automobile policy, Policy No. 66 31 U 007092, to Donald E. Jurkoic and Tolonda M. Tolbert, at the address of 211 Lincoln Road, Brooklyn, New York 11225-3422, for a policy period of February 29, 2016 to August 30, 2016 ("Policy"). Exhibit A at NWA_0006.

2.      The Policy provides comprehensive, collision, liability, Mandatory Personal Injury Protection ("PIP"), Supplementary Uninsured/Underinsured Motorist ("SUM"), and Optional Basic Economic Loss ("OBEL") coverages for a 2012 Honda Odyssey, VIN 5FNRL5H94CB045009, garaged at 211 Lincoln Road, Brooklyn, New York 11225. Ex. A at NWA_0007-0008.

3.      The Policy contains numerous provisions that are specific to New York (Ex. A at NWA_0008), including the Mandatory PIP Endorsement (New York), the SUM Endorsement (New York), the Rental Vehicle Coverage Endorsement (New York), the OBEL Coverage (New York), and the Loss of Use Comprehensive or Collision Coverages (Auto Rental) (New York). Ex. A at NWA_0031-0045.

4.      The Policy makes specific reference to New York law throughout the Policy:

a.      The Declarations page states that "Effective June 1, 2009 Each Vehicle Premium Includes a $ 5.00 New York Motor Vehicle Law Enforcement Fee as Required by the State of New York." Ex. A at NWA_0006. *See also id.* at NWA_0008.

- 2 -

b.      The Special Coverage Conditions of the "Physical Damage" coverage provides:
"We have the right to inspect any private passenger auto before insuring it for these coverages.
This must be done as prescribed by the New York State Insurance Department." Ex. A at
NWA_0020. In addition, Nationwide may require "a completed 'Certification of Auto Repairs' as
prescribed by the New York State Insurance Department." *Id.* The General Policy Conditions
provide that with respect to nonrenewal, "The required policy period is determined by New York
law." *Id.* at NWA_0027.

c.      The Mandatory PIP Endorsement (New York)[1] makes specific reference to Article
9 of the New York Workers' Compensation Law, Article 41 of New York's Public Health Law,
and to care and treatment "recognized by the laws of New York." Ex. A at NWA_0031. It also
provides that "Payments hereunder for necessary medical expenses shall be subject to the
limitations and requirements of Section 5108 of the New York Insurance Law." *Id.* at NWA_0032.
The exclusions specifically reference the New York Comprehensive Motor Vehicle Insurance
Reparations Act, the New York Vehicle and Traffic Law, and the New York Public Health law as
bearing on the exclusions. *Id.* at NWA_0032-0034. The endorsement also refers to proceedings to
recover damages for personal injury under § 5104(b) of the New York Insurance Law, and to other
insurance under Article 51 of the New York Insurance Law and Article 6 or 8 of the New York
Vehicle and Traffic Law. *Id.* at NWA_0034-0035.

d.      The SUM Endorsement (New York) references § 5102(d) of the New York
Insurance Law in its exclusions, Article 51 of the New York Insurance Law in its Non-Duplication

---

[1] Plaintiff recovered PIP benefits under the Policy in compliance with New York law.

provision, and § 3420(f)(1) of the New York Insurance Law and Article 6 or 8 of the New York Vehicle & Traffic Law in its arbitration provision. Ex. A at NWA_0038 and NWA_0040.

       e.      The Policy includes the Rental Vehicle Coverage Endorsement (New York) that "is mandated by New York State law." Ex. A at NWA_0041.

       f.      The Policy relies on New York law for the definition of various policy terms, including "motor vehicle" which "means a motor vehicle, as defined in Section 311 of the New York Vehicle and Traffic Law." Ex. A at  NWA_0034.

       5.      Section 1(f)(1) of the Policy's General Policy Conditions provides, in part:

       1.      **HOW YOUR POLICY MAY BE CHANGED**

              *      *      *      *      *      *      *      *

       e)      The premium for each coverage is based on information in **our** possession. Any change or correction in this information will allow **us** to make an adjustment of the premium as of the date the change is effective.

       f)      The **policyholder** has a duty to notify **us** as soon as possible of any change which may affect the premium or the risk under this policy. This includes, but is not limited to, changes in:

         (1)      the principal garaging address of the insured vehicle(s), which must be reported to **us** within 30 days of the date the address change becomes effective; …

         (4)      desired coverages, **deductibles**, or limits. Ex. A at NWA_0026.

       6.      Section 10 of the Policy's General Policy Conditions provides that "No legal action may be brought against **the company** concerning any of the coverages provided in this policy until the **insured** has fully complied with all the terms of the policy." Ex. A at NWA_0028.

       7.      The Insurance Identification Cards for the Policy are "New York State" Insurance Identification Cards, which state: "An authorized New York Insurer has Issued an Owner's Policy of Liability Insurance complying with Article 8 (Motor Vehicle Financial Security Act) of the New York Vehicle and Traffic Law to" Plaintiff. Ex. A at NWA_0002.

8.      On August 15, 2016, Plaintiff Tolonda Tolbert alleges she was involved in a motor vehicle accident with a "phantom driver" whose vehicle struck Plaintiff's 2012 Honda Odyssey in Denver, Colorado. Doc. 4, ¶¶ 6-13.

9.      At the time of the accident, the 2012 Honda Odyssey insured under the Policy was registered, licensed, and titled in New York, not in Colorado. Exhibit B.

10.     The Traffic Accident Report lists Plaintiff as having a New York driver's license. *Id.* at NWA_2505.

## III.    Standard of review.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, this Court must view the record and all reasonable inferences which may be drawn from it most favorably to the nonmoving party. *Wilson v. Meeks,* 98 F.3d 1247, 1253 (10th Cir. 1996). A party opposing summary judgment on the ground that material facts are disputed has the burden to demonstrate a genuine issue for trial on a material matter. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). Under Fed. R. Civ. P. 56(e), a party opposing summary judgment may not rest solely on the allegations in the pleadings, but must instead go beyond the pleadings and by affidavits, or by depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. *See* Fed. R. Civ. P. 56(e). If the nonmoving party cannot muster sufficient evidence to make

out a triable issue of fact, the moving party is entitled to summary judgment as a matter of law.

*Celotex*, 477 U.S. at 324. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-52 (1986).

**IV.     Reasons for granting partial summary judgment.**

      **A.     New York law governs the Policy.**

            **1.     The Policy was issued in New York to New York residents to cover an automobile garaged in New York. The Policy contains specific provisions consistent with and required by New York law, and the premiums reflect those coverages.**

The Policy was issued in New York to New York residents and provides New York coverages for an automobile garaged in New York. SUF 1-2. The Policy provides the liability and PIP coverage which is mandatory in New York under N.Y. VEHICLE & TRAFFIC LAW § 312(1) and N.Y. INS. LAW § 5103(1)(a). The Policy's SUM Endorsement (New York) includes those provisions required by New York's regulation of SUM coverage. *See* N.Y. COMP. CODES R. & REGS. tit. 11, § 60-2.3 (2020).[2] All of the Policy's coverage provisions are in the form of endorsements that comply with New York law and specifically reference New York law as the governing law. SUF 3-4.

Moreover, the Policy's premiums were established in compliance with and approved by the New York Insurance Department. *See* NY INS. LAW §§ 2301, *et. seq.* (New York's detailed

---

[2] Significant differences exist between New York and Colorado insurance laws. *Compare* N.Y. COMP. CODES R. & REGS. tit. 11, § 60-2.3 (2020) (requiring a SUM endorsement to contain anti-stacking and non-duplication of PIP benefits (Article 51 of the New York Insurance Law) provisions) *with Snell v. Progressive Preferred Ins. Co.*, 260 P.3d 37 (Colo. App. 2010) (recognizing Colorado's UM/UIM statute was amended in 2008 to remove language permitting insurers to include anti-stacking provisions in UM/UIM policies) *and Calderon v. Am. Fam. Mut. Ins. Co.*, 383 P.3d 676 (Colo. 2016) (insurer may not reduce UM/UIM coverage by a setoff from any other coverage under Colo. Rev. Stat. § 10-4-609(1)(c)).

statutory scheme outlining the process of rate making and approval of rates).[3] The Policy's premiums factor in a number of classifications, including the garaging address. *See* 2 NEW APPLEMAN N.Y. INS. LAW § 26.03[3] (2019) ("Automobile insurance rate classifications in New York include sex, age, marital status, driving record, occupation, place where the automobile is garaged (also known as territory), and make and model of the automobile to be insured (for comprehensive and collision coverages)….Territory has been used as a factor because the location in which an insured houses and drives an automobile is important in anticipating the frequency and severity of loss….These rate structures are based upon the different classes developed using actuarially sound statistics."). Based on the foregoing, New York law should apply.

### 2.    Colorado choice of law principles in contract actions.

Colorado applies the "most significant relationship approach" for determining the choice of law in contract actions, including actions on insurance policies. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372-73 (Colo. 1979); *Werden v. Allstate Ins. Co.*, 667 F.Supp.2d 1238, 1241 (D. Colo. 2009); *Pompa v. Am. Family Mut. Ins. Co.*, 506 F.Supp.2d 412, 416 (D. Colo. 2007). *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6 and 188 (1971). Under this approach, the objective is to locate the state having the "most significant relationship" to the particular issue. In analyzing which state has the most significant relationship, the principles

---

[3] *See also* 2 NEW APPLEMAN N.Y. INS. LAW § 26.03[1] (2019) ("In order to effectuate these ratemaking standards, New York has adopted various methods of regulating rates for different lines or types of business….[I]f an insurer wants to change its private passenger automobile rates, which are subject to prior approval by the Insurance Department…, it must file its proposed rates with the Insurance Department along with supporting data. The insurer must then wait until the Insurance Department has reviewed and approved the rates before the insurer can use them."

set forth in §§ 6 and 188 are to be taken into account. Once the state having the most significant

relationship is identified, the law of that state is then applied to resolve the particular issue. *Wood*

*Bros. Homes*, 601 P.2d at 1372.

Under § 188 of the Second Restatement, the rights and duties of the parties with respect to

an issue in contract are determined by the local law of the state which, with respect to that issue,

has the most significant relationship to the transaction and the parties. *Wood Bros. Homes*, 601

P.2d at 1372. Section 188(2) provides that in the absence of an effective choice of law by the

parties, the contacts to be taken into account in determining the law applicable to an issue of

contract include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the

place of performance; (d) the location of the subject matter of the contract; and (e) the domicile,

residence, nationality, place of incorporation and place of business of the parties.  These contacts

are to be evaluated according to their relative importance with respect to the particular issue. *Wood*

*Bros. Homes*, 601 P.2d at 1372.

Further, RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 (1971) which specifically

addresses the choice of law applicable to insurance contracts, provides:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby
> are determined by the local law of the state which the parties understood was to be the
> principal location of the insured risk during the term of the policy, unless with respect to
> the particular issue, some other state has a more significant relationship under the principles
> stated in § 6 to the transaction and the parties, in which event the local law of the other
> state will be applied.

Courts applying Colorado law have expressly held that insurance policies generally are interpreted

under the law of the state where the policy was issued. *See Blue Cross of W. N.Y. v. Bukulmez*, 736

P.2d 834, 841 (Colo. 1987); *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996); *Budd*

- 8 -

*v. Am. Excess Co.*, 928 F.2d 344, 347 (10th Cir. 1991); *Miller v. Am. Family Mut. Ins. Co.*, 104 F. Supp. 3d 1232, 1235 (D. Colo. 2015); *Westby v. State Farm Mut. Auto. Ins. Co.*, 2016 U.S. Dist. LEXIS 15050, at *6 (D. Colo. Feb. 8, 2016). *See also TPLC, Inc. v. United Nat. Ins. Co.,* 44 F.3d 1484, 1491 (10th Cir. 1995) ("It simply would not make sense to have insurance contract notice provisions interpreted in fifty different ways every time a dispute arose between [the insurer] and one of its insureds.").

### 3.   Colorado choice of law principles in tort actions.

In tort actions, Colorado generally applies the choice-of-law principles in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).[4] *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509 (Colo. 2007). Under Colorado law, therefore, the state with the "most significant relation-ship" with the occurrence and the parties governs tort actions when there is a dispute over which state's tort law governs. *Id.* at 509-10.

### 4.   Because the state with the most significant relationship to the Policy and the parties under Colorado choice-of-law principles is New York, that law governs the interpretation and performance under the Policy.

---

[4] Section 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

When Colorado's "most significant relationship approach" is applied to the Policy—which was issued in New York to Named Insureds who resided in New York to insure a vehicle garaged in New York—only one conclusion is possible: under decisions such as *Sellers*, 82 F.3d at 352, and *Budd*, 928 F.2d at 347, New York law governs the Policy.  Moreover, it does not make sense to subject Nationwide's New York Policy, with premiums based on New York laws and risks written in compliance with New York law, to fifty different interpretations each time a dispute arises between Nationwide and one of its insureds. *TPLC, Inc.,* 44 F.3d at 1491.

Because, however, *Wood Bros.* directs courts to examine the factors in Restatement § 188, the analysis does not stop there. With respect to the first factor under § 188, the place of contracting, the contract was entered into in New York where it was issued and where the Named Insureds were located. Ex. A at NWA_0002, NWA_0006-0008. For the second factor, the place of negotiation of the contract, the contract was negotiated in New York, where the Named Insureds were located. *Id.* With respect to the third § 188 factor, the place of performance, this factor, too, favors New York, where the Named Insureds were located, where the vehicle was garaged, and correspondingly where premiums for the Policy were established. *Id.* With respect to the fourth factor, the location of the subject matter of the contract, the location of the vehicle insured under the Policy is New York. *Id.* at NWA_0006. With respect to the fifth factor, the domicile, residence, nationality, place of incorporation and place of business of the parties, the Named Insureds resided in New York when the Policy was issued. *Id.*

Considering all five § 188 factors together shows that while Colorado may have a slight interest in this dispute by virtue of one of the Named Insureds now being located in Colorado, New

York is nevertheless the state with the most significant relationship to the insurance contract, since the Policy was issued in New York under New York law to Named Insureds located in New York to cover a vehicle garaged in New York. Given that the Policy provides coverages which are specific to and mandated by New York law and that it makes repeated reference to specific provisions of New York law, which are incorporated into the Policy (SUF 3-4, 7), the clear intent of the parties was that the Policy was to be governed by New York law.

The additional factors described in § 6 do not compel a different conclusion. These factors include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *See Wood Bros.*, 601 P.2d at 1372. Even considering these factors, none of them weighs more in favor of Colorado law than New York law, so that New York still has the most significant relationship to the Policy compared to any other state. *Cf. Werden*, 667 F.Supp.2d at 1242. Moreover, there is nothing to show that Nationwide in any way availed itself of Colorado law by issuing the Policy in New York to Named Insureds whose residence and vehicle were located in New York.

The factors in § 193 of the Restatement also favor of New York law. Section 193 states that the rights created by a contract of casualty insurance "are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy." According to Comment b. to § 193, "The location of the insured risk will be

given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state."[5] Consequently, where the risk will be in a particular state for a major portion of the insurance period, the risk's principal location is the most important contact to be considered in the choice of the applicable law, at least as to most issues." *Id.*

Here, because the Policy indicates the 2012 Honda Odyssey is garaged in New York, the parties "understood [it] was to be the principal location of the insured risk during the term of the policy." Consequently, "the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy" is New York, because New York is where the parties understood the "insured risk," *i.e.*, the 2012 Honda Odyssey, was located. *See Ackerman v. Foster*, 974 P.2d 1, 4 (Colo. App. 1998) (under § 193, automobile insurance contracts "are generally to be determined by the local law of the state that the parties understood was to be the principal location of the insured risk during the term of the policy"; hence, where an auto policy was issued in California to insureds residing in California, California law governed the policy notwithstanding that the accident occurred in Colorado).

Two cases from this District are instructive. In *Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F.Supp.3d 1254 (D. Colo. 2016), the insured plaintiff was injured in an automobile accident in Colorado, but claimed entitlement to UIM benefits under four auto policies issued in Minnesota

---

[5] **Comment c. to § 193** states: "A number of reasons serve to explain why such importance is attached to the principal location of the insured risk. This location has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend….For these and other reasons, the location of the risk is a matter of intense concern to the parties to the insurance contract."

insuring four vehicles registered and titled in Minnesota. The four Minnesota vehicles were maintained in the names of the principal drivers, who all resided in Minnesota.

Magistrate Judge Nina Y. Wang determined that Minnesota law governed the plaintiff's claim for UIM benefits under the policies issued in Minnesota because they were underwritten and issued in Minnesota to Minnesota residents to provide coverage for vehicles located in Minnesota, because the place of negotiating the contract was Minnesota, and because the contracting parties' expectation was that the insured vehicles would be used in Minnesota. *Id.*, 159 F.Supp.3d at 1271. The court further relied on the fact that the policies were issued to be compliant with and included multiple references to Minnesota law, and on the fact that the ratings and premiums were calculated in reliance upon the primary risk being located in Minnesota. *Id.* at 1272.

More recently, in *Bowers v. Buckeye State Mut. Ins. Co.*, 2019 U.S. Dist. LEXIS 4040 (D. Colo. Jan. 9, 2019), Judge Christine M. Arguello addressed a similar situation. The insured plaintiff was injured in an automobile accident in Colorado while driving a vehicle covered by an auto insurance policy issued to the plaintiff's father, as named insured, in Kansas, where he resided. The insured vehicle was also located in Kansas when the policy was renewed, and the parties understood Kansas to be the principal location of the vehicle at the time of renewal. The issue was whether Kansas law or Colorado law governed the plaintiff's claim for UIM benefits under the policy.

Judge Arguello determined that Kansas law governed the plaintiff's entitlement to UIM benefits because the principal location of the insured risk under Restatement § 193 was Kansas, the named insured resided in Kansas when the policy was issued and renewed, the policy was

issued and delivered in Kansas, and the parties understood that the principal location of the insured vehicle was Kansas. *Bowers*, at *12-*15. The court further determined that the policy's multiple references to Kansas law and inclusion of endorsements that conformed with Kansas law weighed in favor of Kansas law applying: "[A]lthough the Policy does not explicitly indicate that it is intended to be governed by Kansas law, the title of relevant provision indicates that it is related to Kansas in particular, and the substance of the provision applies the Kansas statutory standard for UIM coverage. Accordingly, the Policy does particularize the standard governing the underinsured motorist provision to a specific state." *Id*. at *16-*17.

Similarly, here, New York law applies under Colorado's contract choice-of-law principles because the Policy was issued in New York and delivered to New York residents to provide coverage for a vehicle garaged and located in New York, the place of negotiating the contract was New York, the Policy was issued to be compliant with New York law and includes multiple references to New York law as the governing law, and the ratings and premiums were calculated in reliance upon the primary risk being located in New York. *See Kipling*, 159 F.Supp.3d at 1271-73; *Bowers*, 2019 U.S. Dist. LEXIS 4040 at *12-*17; Section IV.A.1., *supra*.

New York law applies under Colorado's tort choice of law principles as well. Because any obligation to pay SUM benefits arises entirely from the express language of the insurance contract, and not from any Colorado common law rule, New York is the state with the most significant relationship to the Policy compared to Colorado. Section 145(2) of the Restatement also includes, as factors to be considered in determining which state's tort law is applicable to an issue, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of

incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered. All of these factors weigh in favor of New York law, which is where the parties were located when the Policy was issued, where the insurance relationship between the parties is centered, and where Plaintiff's SUM claim was handled.

Moreover, when Nationwide issued the Policy in New York to New York residents to provide coverage for a vehicle garaged in New York, Nationwide did not contemplate being subjected to Colorado law, and the premiums likewise did not account for Colorado law, especially a remedy as severe as that as § 10-3-1116(1).[6] *Cf. Kipling*, 159 F.Supp.3d at 1273 ("in entering the contract, State Farm had no expectation that it would be exposed to risk in a state in which the laws allow injured parties to stack UIM benefits"); *Bowers*, 2019 U.S. Dist. LEXIS 4040 at *25-*26 ("applying Colorado law would violate Defendant's justified expectations and it would undermine the predictability of insurance contracts. Specifically, it is unlikely that Defendant expected to be subject to Colorado law because it entered into the Policy with Kansas residents and the subject matter of the contract was located in Kansas.").

### B. Because New York does not recognize a tort action for bad faith breach of insurance contract, Plaintiff's Second Claim for Relief must be dismissed.

Because New York law governs Plaintiff's action for breach of the insurance contract, it also governs Plaintiff's claims sounding in bad faith, which are directly dependent on their breach of contract claim. *See Commerce & Indus. Ins. Co. v. U.S. Bank Natl. Assn.*, 2008 U.S. Dist. LEXIS 67768, *13 (S.D.N.Y. 2008) (same state's law should govern both contract and bad faith claims;

---

[6] Similarly, Colorado's UM/UIM statute only applies to policies issued in Colorado. COLO. REV. STAT. § 10-4-609(1)(a).

"where the allegation of bad faith refusal to pay depends on a determination of the [insurer's] obligations under the insurance contract, the breach of contract and bad faith claims are inextricably intertwined and should be governed by the laws of the same state.").

The application of New York law to the common law bad faith claim is supported by the United States Supreme Court decision in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985). There, the Supreme Court held that a claim under Wisconsin law for bad faith handling of an insurance claim under a disability insurance plan included in a collective bargaining agreement was preempted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). The Supreme Court reasoned that the tort was "inextricably intertwined" with matters of contract interpretation: "Because the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation." *Id.*, 471 U.S. at 218.

So too, here, Plaintiff's bad faith claim is "inextricably intertwined" with her breach of contract claim, and therefore the law of the same state—New York—should govern both the common law bad faith claim as well as the contract claim. Unlike Colorado, however, New York does not recognize an independent common law cause of action against an insurer in tort for bad faith breach of a first-party insurance contract, since liability for bad faith conduct is a matter of contract rather than tort law. Therefore, under New York law, Plaintiff has no right of action for bad faith separate and apart from her claim for breach of contract.

New York's highest court has recognized that implicit in every contract of insurance is "a covenant of good faith and fair dealing, which encompasses any promises that a reasonable

promisee would understand to be included," such that a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims. *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 766 (N.Y. 1995). Because the implied covenant of good faith and fair dealing is a contractual duty, New York generally does not recognize a claim for bad faith because such claims would be duplicative of a claim sounding in breach of contract. *Id.,* 662 N.E.2d at 768 ("[W]here a party is merely seeking to enforce its bargain, a tort claim will not lie."). "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." *Vitrano v. State Farm Ins. Co.*, 2008 U.S. Dist. LEXIS 51787, *11-*12 (S.D.N.Y. 2008).

Consequently, where a claim for breach of contract is asserted based on the same conduct or events, a bad faith claim based on the breach of the implied covenant of good faith and fair dealing fails to state a claim for relief under New York law.[7] *See Werden v. Allstate Ins. Co.*, 2009

---

[7] *See New York Univ.*, 662 N.E.2d at 770 (bad faith claim should have been dismissed as duplicative as "Plaintiff's claim amounts to nothing more than a claim based on the alleged breach of the implied covenant of good faith and fair dealing, and the use of familiar tort language in the pleading does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages."); *Royal Indem. Co. v. Salomon Smith Barney, Inc.*, 764 N.Y.S.2d 187, 188 (N.Y. App. Div. 2003) ("Allegations that an insurer had no good faith basis for denying coverage are redundant to a cause of action for breach of contract based on the denial of coverage, and do not give rise to an independent tort cause of action, regardless of the insertion of tort language into the pleading."); *Fabrizio v. Erie Ins. Co.*, 2009 U.S. Dist. LEXIS 13344, *10-*12 (N.D.N.Y. 2009) (dismissing bad faith claim based on insurer's alleged failure to conduct an adequate investigation because "[t]hat allegation does not state a tort claim, it merely raises a question for the fact finder determining the breach of contract claim."); *Commerce & Indus. Ins. Co.*, 2008 U.S. Dist. LEXIS 67768, *7-*8 (dismissing insured's bad faith refusal to pay claim as "duplicative of the cause of action for breach of contract"); *Polidoro v. Chubb Corp.*, 354 F.Supp.2d 349, 352 (S.D.N.Y. 2005) ("Plaintiff's claim for bad-faith conduct in handling insurance claims is not legally-cognizable under New York law."); *Core-Mark Intl. Corp. v. Commonwealth Ins. Co.*, 2005 U.S. Dist. LEXIS 14312, *9 (S.D.N.Y. 2005) (bad faith claim

U.S. Dist. LEXIS 57147, *10-*11 (D. Colo. July 2, 2009) (dismissing bad faith claim because New York law governed policy and did not recognize "tort cause of action for 'bad faith' in the context of a first-party claim"); *Werden*, 667 F.Supp.2d at 1239 (New York "does not recognize a claim for bad faith breach of insurance contract."); *U.S. Fire Ins. Co. v. Bunge N. Amer., Inc*., 2008 U.S. Dist. LEXIS 59737, *57-*59 (D. Kan. Aug. 4, 2008) (dismissing claim for breach of duty of good faith and fair dealing as duplicative of breach of contract claim under New York law).

Because Plaintiff has asserted a claim for breach of contract, and because New York law does not recognize an independent tort claim for bad faith under these circumstances, Plaintiff's Second for Relief fails to state a claim for relief as a matter of law under New York law. *See New York Univ.*, 662 N.E.2d at 769-70; *Fabrizio*, 2009 U.S. Dist. LEXIS 13344 at *10-*12; *Commerce & Indus. Ins. Co.*, 2008 U.S. Dist. LEXIS 67768 at *3; *Core-Mark*, 2005 U.S. Dist. LEXIS 14312 at *9; *see also Werden*, 2009 U.S. Dist. LEXIS 57147 at *10-*11. Plaintiff thus has no cause of action under New York law for any damages in tort, and her cause of action against Nationwide is accordingly limited to her claim for breach of contract. Summary judgment should therefore be entered in favor of Nationwide on Plaintiff's Second Claim for Relief.

   **C.    Because New York law governs the Nationwide policy, Plaintiff's Third  Claim for Relief must be dismissed because Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 have no extraterritorial application.**

Because New York law applies to an insurance policy issued in New York to New York insureds whose residence was in New York and whose automobile was garaged in New York,

---

should be dismissed because New York law applies to bad faith claim pursuant to choice of law provision and "New York does not recognize the tort of bad faith denial of insurance coverage"; "[B]ecause Core-Mark's tort allegations stem solely from Commonwealth's alleged failure to handle Core-Mark's insurance claims under the Policy, Core-Mark's bad faith claim is not actionable under New York law.")

Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 do not apply since nothing in these statutes indicates they are to have any extraterritorial application. Nothing in § 10-3-1115 or § 10-3-1116 suggests that an action for unreasonable delay or denial of benefits may be brought under an insurance policy that was issued outside Colorado to non-Colorado insureds, or that §§ 10-3-1115 and 1116 were intended to have extraterritorial effect. Indeed, § 10-3-1116(2) and (3) apply only to insurance policies issued in Colorado. In the absence of any such express provision, the statutes cannot be presumed to have any extraterritorial effect. *Frontier Airlines, Inc. v. Dept. of Revenue*, 571 P.2d 1088, 1089 (Colo. 1977); *Peerless Ins. Co. v. Clark*, 487 P.2d 574, 575 (Colo. App. 1971).

Moreover, "Once it has been determined that the law of a particular state governs the interpretation of an insurance contract, any statutory insurance claims that implicate performance of the contract must also be raised under the law of the controlling state." *Werden*, 667 F.Supp.2d at 1245. It is well settled that the legislative authority of every state is confined in its operation to the territorial limits of the state, and that "No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived." *Hilton v. Guyot*, 159 U.S. 113, 163 (1895). "Legislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918). As the Colorado Supreme Court recognized in *Solliday v. Dist. Court*, 313 P.2d 1000, 1004 (Colo. 1957), "It is a long established general rule of law, not requiring the citation of authority, that no state court or government has authority beyond its own borders, each state being sovereign as to its own territory and those residing therein."

Because §§ 10-3-1115 and 10-3-1116 do not expressly provide that they have extraterritorial effect, and because it must therefore be presumed that they do not, *Frontier Airlines*, 571

P.2d at 1089, they do not apply to an insurance policy issued in New York to non-Colorado insureds. Summary judgment should therefore be entered in favor of Nationwide on Plaintiff's Third Claim for Relief for failure to state a claim on which relief may be granted.

**V.    Conclusion.**

For the foregoing reasons, Defendant Nationwide respectfully requests the Court to enter summary judgment in its favor dismissing Plaintiff's Second and Third Claims for Relief.

Respectfully submitted this 20th day of March, 2020.

**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/ Katelyn S. Werner*
John M. Palmeri
Katelyn S. Werner
Tessa F. Carberry
555 Seventeenth Street, Ste. 3400
Denver, Colorado 80202
(303) 534-5160
jpalmeri@grsm.com
kwerner@grsm.com
tcarberry@grsm.com
ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system which will send notification to all counsel of record, this 20th day of March, 2020.

Joseph J. Archuleta, Esq.                    Kirk R. McCormick, Esq.
Joseph J. Archuleta & Associates, P.C.       McCormick & Murphy, P.C.
1724 Ogden St.                               929 W. Colorado Ave.
Denver, CO 80218                             Colorado Springs, CO 80905

*/s/  Linda J. Bustos*